PHILLIP A. TALBERT
United States Attorney
KEVIN P. ROONEY
Assistant United States Attorney
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile:  (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF VLADIMIR BLASKO TO THE SLOVAK REPUBLIC | CASE NO. 1:17-MC-000067 SAB<br><br>MEMORANDUM OF LAW IN OPPOSITION TO BAIL |

MEMORANDUM OF LAW IN OPPOSITION TO BAIL

On October 6, 2017, Vladimir Blasko ("Blasko") was arrested on the basis of a complaint seeking his extradition to Slovakia so that he can serve a sentence imposed there on 15 April 2013, for abuse of power and assault. The United States, on behalf of the Government of Slovakia and in fulfillment of its treaty obligations, respectfully submits this memorandum in support of its application that Blasko be detained pending the extradition hearing in this matter, and thereafter, if the Court enters an order finding him extraditable.[1]

---

[1] In support its request for the extradition of Vladimir Blasko, Slovakia submitted Diplomatic Note No. 009401/2017-USKU-0076139 dated 6 June 2017 and accompanying documents. These materials were filed with the complaint seeking Blasko's arrest.

The documents submitted in support of Blasko's extradition contain Slovakian and English versions. To assist the court in its review of this request, we made copies of the Slovakian and English versions of the

I. Factual Background

On 13 July 2007, at around 9:30 p.m., Vladimir Blasko and Michal Krajmer, officers with the Police Force in Nitra, Slovakia, responded to a call for a disturbance at a bar in the village of Stitare. (R. at 43-44, 46, 51). After they arrived at the bar, Maria Csulakova, who along with Denisa Lacova had been involved in the altercation with Zoltan Peli, pointed Peli out to Blasko as the person who allegedly assaulted her. (*Id*. at 44-46, 49-50).[2] When Blasko approached Peli and asked him to come with them, Boris Kozma, a friend of Peli's, asked Blasko where they were taking him. (*Id*. at 43, 49, 51, 53-54, 57). Blasko responded that it was none of his business but Kozma repeated his question and identified himself as a "senior sergeant." (*Id*. at 43, 49, 51, 52). Blasko requested proof, and when Kozma provided a card which identified him as a prison guard, Blasko screamed that he was not a policeman and directed Peli to get going. (*Id*. at 43, 51, 53-55, 57). Kozma again asked where they were taking his friend and Blasko responded by striking Kozma on his face and then throwing him on the ground where he was then kicked. (*Id*. at 43, 49, 51-55, 57, 58). In the process, Kozma and Blasko struck a table and Kozma was cut by broken glass. (*Id*. at 43, 49, 51-54, 57). Blasko thereafter placed Kozma in handcuffs and escorted him to the police car. (*Id.* at 45, 49, 51, 53, 55).

Kozma was seated next to Peli in the police cruiser and was bleeding from his nose and mouth and his clothes were covered with blood (*Id*. at 43, 53). On the way to the police station, Kozma reiterated that he was a member of the force and requested medical attention. (*Id.* at 43). Once they arrived at the station, Blasko took Kozma to a corridor where, after the light was turned off, Blasko started screaming at Kozma

---

documents submitted, organized them, and assigned numbers to each. A binder containing this numbered version of the request was provided to the court as Exhibit #1 to the Government's Complaint, *see* Docket No. 1. In this memorandum, relevant portions of the record are referenced by the letter "R." and the corresponding page(s).

[2] According to Lacova, the altercation was precipitated by a "small dog" she and Csulakova had with them at the bar. (R. at 45). The dispute led to Peli slapping her twice and Csulakova once. (*Id*. at 45, 55). Kozma also "attacked her verbally" concerning the dog and the fact she was not a local. (*Id*.).

MEMORANDUM OF LAW IN OPPOSITION
TO BAIL

and then struck him in the face. (*Id*. at 43). Kozma fell to the ground and Blasko kicked him a few times. (*Id*. at 43). He then placed Kozma inside a cell. (*Id*. at 43).

Kozma had his cell phone with him and called his wife asking for help. (*Id.* at 43, 47, 55). She went to the police station and saw her husband behind bars "horribly beaten, he had his hands handcuffed behind his back, his clothes and his face were covered in blood, his face was swollen on the left side so that it was not possible to see his left eye." (*Id*. at 47). Peli described Kozma as a "beaten man." (*Id*. at 56). A doctor who examined Kozma at the station administered an "infusion" and gave him painkillers before he was taken by ambulance to the hospital. (*Id*. at 44-45, 47, 53-56). Kozma suffered a brain concussion, bone fractures on his nose, a face contusion in the area of his left eye with subcutaneous bleeding, a cervical spine sprain, partial damage to nerve fibers in the radial nerve area of his right forearm, and headaches for weeks. (*Id*. at 59, 61).

On 15 April 2013, following his trial before the District Court of Nitra, Blasko was found guilty of abuse of power by a public official and misdemeanor assault and sentenced to a term of imprisonment of four years. (*Id*. at 5; 41-69). On 7 November 2013, following Blasko's appeal, the Regional Court of Nitra affirmed his four-year sentence. (*Id*. at 6-6; 82-88).

II.   <u>The Legal Standard</u>

The federal statute governing extradition procedures in the United States, 18 U.S.C. §§ 3184 *et seq.*, does not provide for bail. Further, the Bail Reform Act, Title 18 U.S.C. §§ 3141 *et seq*, does not apply in extradition matters because an extradition proceeding is not a criminal case. *See, e.g. Kamrin v. United States*, 725 F.2d 1225, 1227-28 (9th Cir. 1984); *In re Extradition of Perez-Cueva*, No. 16-0233M, 2016 WL 884877, at *1 (C.D. Cal. March 7, 2016); *United States v. Wroclawski*, 574 F. Supp. 2d 1040 (D. Ariz. 2008).[3] Rather, case law provides that bail should be granted in an extradition

---

[3] The Bail Reform Act applies only to "offenses" in violation of U.S. law that are triable in U.S. courts. *See* 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2). Here, Blasko is not charged with an "offense" within the meaning of 18 U.S.C. § 3156, but rather with abuse of power and assault in violation of the

MEMORANDUM OF LAW IN OPPOSITION
TO BAIL

proceeding "only in the most pressing circumstances, and when the requirements of justice are absolutely peremptory." *United States v. Leitner*, 784 F.2d 159, 160 (2d Cir. 1986) (quoting *In re Mitchell*, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

### A.  A strong presumption against bail governs in an international extradition proceeding

Unlike the case in domestic crimes, "there is a presumption against bail in an extradition case." *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989); *see also United States v. Snyder*, No. 13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. April 3, 2013) (noting that presumption against bail in extradition is "well-established"). Both the U.S. Supreme Court and the federal courts of appeals have long held that bail should be granted in extradition proceedings in only the most unusual of circumstances.

In establishing this presumption against bail, the Supreme Court in *Wright v. Henkel*, 190 U.S. 40 (1903), explained that when a foreign government makes a proper request under a valid extradition treaty, the United States is obligated to deliver the person sought after he or she is apprehended:

> The demanding government, when it has done all that the treaty and the law require it to do, is entitled to the delivery of the accused on the issue of the proper warrant, and the other government is under obligation to make the surrender; an obligation which it might be impossible to fulfill if release on bail were permitted. The enforcement of the bond, if forfeited, would hardly meet the international demand; and the regaining of the custody of the accused obviously would be surrounded with serious embarrassment.

*Id.* at 62.

The reasons for this presumption against bail in international extradition cases are clear and compelling. When, as here, the Government of Slovakia meets the conditions of the treaty, the United States is obliged to deliver the fugitive. It is important that the United States be regarded in the international community as a country that honors its agreements in order to be in a position to demand that other nations meet their reciprocal obligations to the United States. Such reciprocity would be

---

laws of Slovakia.

defeated if a fugitive flees after being released on bond. *See id.* at 62; *see also Leitner*, 784 F.2d at 160-61 (the Government has an overriding foreign relations interest in complying with treaty obligations and producing extradited persons).

    B.    The fugitive must establish "special circumstances" and must also demonstrate that he is neither a risk of flight nor a danger to the community for the court to <u>consider the question of bail</u>

In light of the strong presumption against bail established in *Wright*, the federal courts have uniformly held that bail shall not be granted except under "special circumstances." *See e.g.*, *Salerno*, 878 F.2d at 318 ("only 'special circumstances' will justify bail"). "This 'special circumstances' standard is much stricter than the 'reasonable assurance' of appearance standard made applicable to domestic criminal proceedings by the Bail Reform Act." *In the Matter of the Extradition of Lui*, 913 F. Supp. 50, 53 (D. Mass. 1996).

Moreover, the burden is on the fugitive to establish the existence of special circumstances by clear and convincing evidence. *See In re Extradition of Mainero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996); *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1215 (D. Nev. 1993); *In re Extradition of Patel*, No. 08-mj-430, 2008 WL 896069 at *1 (D. Or. Mar. 29, 2008); *but see In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1035 n. 4 (C.D. Cal. 2006) (applying preponderance of the evidence standard). Crucially, the special circumstances inquiry is separate from considerations of danger to the community or risk of flight. *Salerno*, 878 F.2d at 318 (flight risk "is not a criteria for release in an extradition case"); *Perez-Cueva*, 2016 WL 884877, at *2 (special circumstances must exist in addition to absence of risk of flight). Accordingly, a fugitive who poses a danger to the community (in this District or elsewhere) should be denied bail, even in the face of special circumstances. *In re Extradition of Siegmund*, 887 F. Supp. 1383, 1384 (D. Nev. 1995); *Nacif-Borge*, 829 F. Supp. at 1215, 1221; *In re Extradition of Gohir*, No. 14-mj-00314, 2014 WL 2123402, at *12-13 (D. Nev. May 21, 2014) (even if "inclined" to find special circumstances, court not "confident" fugitive did not pose a risk of flight).  Accordingly, to

qualify for bail, a fugitive is required to make a three-part showing that: (1) he or she is not a flight risk; (2) that he or she is not a danger to the community; and (3) that "special circumstances" exist warranting the granting of bail. *See e.g.*, *Nacif-Borge*, 829 F. Supp. at 1215, 1221.

### III. Argument

The Court should detain Blasko without bond in this matter. A fugitive charged with crimes in another country is already by definition in flight or deliberately absent from that jurisdiction. Here, there can be no question that Blasko poses a real risk of flight given that he left Slovakia in February 2010 after he had been accused in January 2008. (R. at 5, 59). Put another way, further flight from the United States to yet another country, or to an underground location in the United States, is a reasonable assumption if he were released on bail. Further, the conduct of which Blasko stands *convicted* demonstrates that he is also a danger to the community. In short, because Blasko is a risk of flight and a danger to the community, the Court need go no further in order to deny any forthcoming application for bail. But even if the Court was satisfied that Blasko is not a flight risk and poses no danger to the community here or abroad, bail must be denied because there are no special circumstances.

Lastly, as the cases make clear, "[t]he rationale for not ordinarily granting bail in extradition cases is that extradition cases involve an overriding national interest in complying with treaty obligations."[4] Here, that interest leaves no doubt that Blasko should be held without bail pending the resolution of the request for his extradition. Allowance of bail in any amount would not guarantee Blasko's presence in court and would invite the possibility of embarrassing the United States in the conduct of its foreign affairs. While forfeiture of bail in domestic criminal cases is designed to

---

[4] *Hababou v. Albright*, 82 F. Supp.2d. 347, 352 (D.N.J. 2000); *accord Castaneda-Castillo*, 739 F. Supp. 2d 49, 56 (D. Mass. 2010); *In re Extradition of Orozco*, 268 F. Supp. 2d at 1116-17; *In re Extradition of Koskotas,* 127 F.R.D. 13, 17-18 (D. Mass. 1989). As noted by the court in *In Re Extradition of Sacirbegovic*, "if the accused were to be released on bond and thereafter absconded, the mere surrender of a quantity of cash or other property 'would hardly meet the international demand' and could cause the United States 'serious embarrassment.'" 280 F. Supp. 2d at 83 (*quoting Wright*, 190 U.S. at 62).

compensate, at least in part, the court that is seeking the accused's presence for trial, forfeiture of bail in international extradition cases due to the failure of the fugitive to appear would leave the requesting country, here Slovakia, without either remedy or compensation.

IV. Conclusion

Wherefore, for the reasons set forth above, the United States respectfully requests that Vladimir Blasko be detained pending the extradition hearing in this matter. He also should remain detained thereafter assuming the Court finds him extraditable.

Dated: October 6, 2017

PHILLIP A. TALBERT
United States Attorney

By:   /s/ Kevin P. Rooney
      Kevin P. Rooney
      Assistant United States Attorney

MEMORANDUM OF LAW IN OPPOSITION TO BAIL