1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9       FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11
IN THE MATTER OF THE                    No. 1:17-mc-00067-DAD-SAB
12
EXTRADITION OF VLADIMIR
BLASKO TO THE SLOVAK REPUBLIC           ORDER GRANTING APPELLANT'S
13                                              MOTION FOR BAIL PENDING
                                        EXTRADITION HEARING
14

15

16          On December 29, 2017, Vladimir Blasko filed a motion seeking his release on bail

17   pending resolution of this international extradition proceeding.  (Doc. No. 16.)  On February 16,

18   2018, United States Magistrate Judge Barbara A. McAuliffe denied that motion.  (Doc. No. 22.)

19   On March 27, 2018, Blasko sought review of the order denying bail.  (Doc. No. 35.)  On April 30,

20   2018, the undersigned held a hearing on the matter.  (Doc. No. 38.)  Assistant Federal Defenders

21   Reed Grantham and Victor Chavez appeared on behalf of Blasko.  Assistant U.S. Attorney

22   Vincenza Rabenn appeared on behalf of the government.  The court heard oral argument and took

23   the matter under submission.

24          For the reasons explained below, Blasko's request for bail (Doc. No. 35) will be granted.

25                              **BACKGROUND**

26   **A.  Procedural History**

27          On June 6, 2017, the Embassy of the Slovak Republic sent a written request to the United

28   States Department of State requesting the extradition of Vladimir Blasko, a citizen of Slovakia

                                        1

residing in Fresno, California, pursuant to Treaties and Instruments between the United States and the Czechoslovak Republic and the Slovak Republic as well as the Agreement on Extradition between the United States of America and the European Union signed on June 25, 2003 (collectively "the Treaty"). (Doc. No. 1 at 7.) On October 2, 2017, the government initiated this extradition proceeding by filing a complaint in this court, seeking the arrest and extradition of Blasko pursuant to 18 U.S.C. §§ 3181, *et seq.* (*Id.* at 1–4.)[1] According to the allegations of that complaint, Slovakia seeks the extradition of Blasko to serve a four-year aggregate sentence of imprisonment imposed in connection with his April 15, 2013 conviction in that country, following a trial *in absentia* for abuse of power and misdemeanor assault.[2] (*Id.* at 2.) The extradition complaint also alleged that Blasko's four-year aggregate sentence was affirmed on appeal on November 7, 2013 and that a warrant for his arrest was issued by the District Court in Nitra, Slovakia on January 21, 2014. (*Id.*)

Blasko was arrested and made his initial appearance in this court on October 6, 2017. (Doc. No. 9.) He has remained in custody since that date. (Doc. No. 10.) On October 6, 2017, the government filed a memorandum of law in opposition to bail. (Doc. No. 8.) On December 29, 2017, Blasko filed a motion for bail and opposition to the government's memorandum. (Doc. No. 16.) The government filed its opposition to the motion seeking the setting of bail on January 18, 2018, and counsel for Blasko filed a reply on January 26, 2018. (Doc. Nos. 18, 19.) As noted above, Magistrate Judge Barbara A. McAuliffe of this court held a hearing on the bail motion on

/////

/////

/////

---

[1] In doing so, the government seeks to fulfill its extradition obligations under the extradition treaty between the United States of America and the European Union.

[2] According to the government, the abuse of power charge apparently brought against Blasko in Slovakia was punishable by a term of imprisonment of four to ten years, while the misdemeanor assault charge carried a maximum term of two years. (Doc. No. 1 at 2.) According to documents submitted with the request for extradition, the four-year term of imprisonment imposed was the minimum sentence given the charges upon which Blasko was convicted *in absentia* in Slovakia. (*See* Doc. No. 1 at 75, 91, 93.).

February 15, 2018, and the following day, issued an order denying bail. (Doc. Nos. 21, 22.)[3]

On February 26, 2018, Blasko filed a notice of appeal from the denial of bail. (Doc. No. 24.) On March 27, 2018, the opening brief in support of the request for bail was submitted. (Doc. No. 35.) The government filed its opposition on April 17, 2018, and Blasko filed his reply on April 17, 2018. (Doc. Nos. 36, 37.) On April 30, 2018, the undersigned held a hearing and took the matter under submission. (Doc. No. 38.) On July 30, 2018, Blasko filed a supplemental memorandum in support of his request for bail. (Doc. No. 44.)

**B. Factual Background**

The facts and history of this unusual extradition case, though somewhat lengthy and complex, are pertinent to the court's bail determination and bear summarizing here. Blasko was employed as a law enforcement officer for the Regional directorate of Police Forces in Nitra, Slovakia, from July 1, 2004 to October 20, 2009. (Doc. No. 35-1, Ex. A.) On the evening of July 13, 2007, while on duty, Blasko and his partner officer Michal Krajmer responded to a call that two women had reported being harassed and slapped by men inside a bar. (*See generally* Doc. No. 1 at 48–76.) Though what transpired next remains unclear and the subject of considerable dispute,[4] Blasko and Krajmer ultimately arrested two patrons of the bar, Zoltan Peli and Boris

---

[3] United States Magistrate Judges are authorized to conduct international extradition proceedings such as these. 18 U.S.C. § 3184; Local Rule 302(b)(8); *see also Santos v. Thomas*, 830 F.3d 987, 991 (9th Cir. 2016) (en banc). A magistrate judge's "decision to certify a person as extraditable is not subject to direct appeal but may be challenged collaterally through habeas corpus review." *Prasoprat v. Benov*, 421 F.3d 1009, 1013 (9th Cir. 2005) (citing *Barapind v. Enomoto*, 400 F.3d 744, 748 n. 5 (9th Cir. 2005) (en banc) and *Cornejo-Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir. 2000)); *see also Santos*, 830 F.3d at 992.

[4] This much does appear relatively undisputed. Upon the officers' arrival at the bar, two females inside reported that Peli and Kozma had accosted them. According to the females, the dispute escalated and Peli slapped both females while Kozma continued to harass them. Upon receiving this report, Blasko approached Peli, who some reported to be drunk, and asked him to come with the officers. Kozma interceded identifying himself as a "senior sergeant." When Blasko requested proof that he was a policeman, Kozma produced a card identifying himself as a prison guard. Thereafter, fisticuffs ensued with subsequent reports of injuries to Kozma, Blasko and Krajmer being made, Kozma's clearly being the most serious. Kozma acknowledged having consumed one beer and "two shots" (Doc. No. 1 at 50, 62) (according to Peli, Kozma had consumed "two cognacs and two small beers" at the bar), which one would expect played some part in this bar room incident. However, who instigated the confrontation and whether excessive force was used then or later at the police station is very much disputed.

Kozma, for disorderly conduct and assault on a public official. (*Id.* at 48–76.) The same day, the District Directorate of Police Corps filed criminal charges against Peli and Kozma. (Doc. No. 35-1, Ex. C.) On January 14, 2009, the Slovakian Military District Prosecution suspended the charges against Kozma, but on October 9, 2009, Peli was convicted of disorderly conduct for his actions on the evening of July 13, 2007. (Doc. No. 1 at 69–70.)

Although the record before this court remains somewhat unclear, Blasko was apparently either accused, charged or indicted on January 8, 2008 for abuse of power and misdemeanor infliction of bodily harm in violation of the Slovakian Penal Code in relation to the July 13, 2007 incident. (*See* Doc. No. 1 at 11; Doc. No. 35-1, Ex. D.) However, counsel for Blasko in these proceedings points out that no charging documents have been produced in this court. (Doc. No. 35 at 12.) In fact, even though he was allegedly indicted in January of 2008, it appears that Blasko remained employed as a law enforcement officer in Slovakia until October 20, 2009, at which time he was terminated without explanation. (*Id.*; Doc. No. 35-1, Ex. A.) Moreover, prior to his termination and during the time between January 2008 and October 2009, his counsel here has submitted documentation that Blasko received four positive work performance reviews with no mention of any allegations of the misconduct on his part. (Doc. No. 35-1, Ex. E.)

In December 2009, Blasko married Martina Gregusova in Nitra, Slovakia, while Gregusova was home on her winter break from college in the United States. (Doc. No. 35-1, Ex. G.) Gregusova had been enrolled at Fresno Pacific University since January 22, 2009. (Doc. No. 35-1, Ex. H.) Following their wedding, Blasko obtained a Slovakian passport. (Doc. No. 35-1, Ex. I.) He also applied for and obtained from the United States Embassy in Slovakia an F-1 student visa. (Doc. No. 35-1, Ex. J.) On January 27, 2010, Blasko received notification from Fresno Pacific University that he had been accepted to that university's Language and Culture Studies Program. (Doc. No. 35-2, Ex. CC.) Blasko alleges that he provided a copy of this letter to the police department in Nitra, because he had been engaged in civil proceedings since his termination contesting the police department's decision to withhold payment of his hospital bills and severance pay. (Doc. No. 35-1, Ex. F.)

/////

Thereafter, using his Slovakian passport and student visa, Blasko left Slovakia and arrived in the United States on February 26, 2010, and attended Fresno Pacific University between February and August 2010. On June 3, 2010, allegedly unbeknownst to Blasko, the Slovakian government filed charges against him relating to the July 13, 2007 incident. (Doc. No. 1 at 11, 105.) Again, Blasko notes that no formal charging documents have ever been produced in this court establishing that charges were filed against him on either January 8, 2008 or June 3, 2010. (Doc. No. 35 at 14.) On June 9, 2011, the District Court in Nitra, Slovakia issued an international warrant for his arrest. (Doc. No. 35-1, Ex. D.) That warrant identified Blasko's last known location as 1717 South Chestnut Avenue in Fresno, California, the address of Fresno Pacific University where he was a student. (*Id.*) Blasko contends that he was unaware of any of these legal proceedings occurring in Slovakia in his absence. (Doc. No. 35 at 14–15.)

On February 15, 2012, U.S. Department of Homeland Security officers arrested Blasko at his home in Fresno, for allegedly failing to maintain the conditions required by his non-immigrant visa status. (Doc. No. 35-1, Ex. L; Ex. M at ¶ 4.) Blasko was informed that he would have to appear before an immigration judge on March 6, 2012, and that he would be transported to a federal detention facility in Arizona to be held in immigration custody until that time. (Doc. No. 35 at 15.) The day following his arrest, Blasko's wife Gregusova hired immigration attorney Jennifer L. Doerrie to represent Blasko in the immigration proceedings. (Doc. No. 35-1, Ex. M at ¶ 2.)

At the March 6, 2012 immigration bond hearing, attorney Doerrie learned that Slovakia had issued an international warrant for Blasko's arrest. (*Id.* at ¶ 6.) Though attorney Doerrie attempted to gain further information from Blasko, it was clear to her that Blasko had no knowledge of the arrest warrant or what it pertained to. (*Id.* at ¶¶ 6, 8.) To provide time to investigate the matter, the bond hearing was continued to March 19, 2012. (*Id.* at ¶¶ 6–7.) At the March 19, 2012 bond hearing in Immigration Court, the Assistant Chief Counsel presented a copy of the international arrest warrant, in light of which the immigration judge denied bond. (*Id.* at ¶ 7.)

/////

Following various interviews with Blasko and his family throughout March and April 2012, on April 20, 2012, Doerrie filed an I-589 asylum application on Blasko's behalf, seeking withholding of his removal and protection under the United Nations Convention Against Torture. (*Id.* at ¶ 9.) A hearing on the merits of that application was originally set for June 11, 2012. (*Id.*)

In advance of the June 11, 2012 immigration hearing, however, attorney Doerrie filed a motion for review of the immigration judge's denial of bond, on the grounds that Slovakia had failed to comply with the terms of its bilateral extradition treaty with the United States, which required Slovakia to file a formal extradition request within two months of an arrest on a provisional warrant. (*Id.* at ¶¶ 6, 10.) At the June 11, 2012 hearing, the immigration judge found that Blasko was neither a danger or a flight risk and that the lack of a formal extradition request was a materially changed circumstance. (*Id.* at ¶ 11.) Accordingly, the immigration judge set an immigration bond of $5,000. (*Id.*) The government did not appeal that decision, and Blasko was released from U.S. Immigration custody on the $5,000 bond on June 22, 2012. (*Id.* at ¶ 12.)

Blasko contends that on June 10, 2015, he learned for the first time, in a meeting with his immigration attorney, Doerrie, that a trial had been conducted in his absence by the district court in Nitra. (Doc. No. 35 at 19; Doc. No. 35-1, Ex. M at ¶ 13.) Attorney Doerrie had received a packet of evidence from the Office of Chief Counsel containing alleged court documents indicating that a Slovakian criminal judgment had been entered against Blasko dated April 15, 2013, and that an appellate decision dated November 7, 2013 affirming Blasko's sentence had been rendered. (Doc. No. 35-1, Ex. M at ¶ 13; Doc. No. 1, Exs. A, B.) Although the judgments made reference to "the accused person's barrister," Blasko contends that he is unaware of who was acting on his behalf in his absence during these proceedings in Slovakia. (Doc. No. 1, Ex. A, B; Doc. No. 35 at 19.)

Meanwhile, on January 21, 2014, following the affirmance of Blasko's sentence on appeal *in abstentia*, the Slovakian government apparently obtained another international warrant for his arrest. (Doc. No. 1 at 97–109.) Nonetheless, it was not until more than forty months later, on June 6, 2017, that the Embassy of the Slovak Republic in Washington, D.C. issued a formal Diplomatic Note to the United States Department of State requesting Blasko's international

extradition and providing the documentation required by the Treaty. (*Id.* at 7–12.)  On October 2, 2017, the United States Attorney's Office for the Eastern District of California, representing the United States in fulfilling its extradition treaty obligations, filed a formal extradition complaint against Blasko, giving rise to these proceedings. (*Id.* at 1–4.)

**LEGAL STANDARD**

The Supreme Court long ago held that while bail should not ordinarily be granted in extradition cases, release was not foreclosed where special circumstances exist. *Wright v. Henkel* 190 U.S. 40, 63, (1903).  Since *Wright*, it has been well-established in this circuit that there is a presumption against bail in an extradition case. *Salerno v. United States*, 878 F.2d 317, 317 (9th Cir. 1989).  This presumption "exists due to the foreign relations interest of the United States in successfully returning persons subject to criminal prosecution to the requesting country. *In re Extradition of Nacif-Borge*, 829 F. Supp. 1210, 1214 (D. Nev. 1993) (citing *Wright*, 190 U.S. at 63 and *Salerno*, 878 F.2d at 317).  "Although it is 'unusual and extraordinary' for bail to be granted, it is not impossible to obtain bail in an international extradition treaty case." *Extradition of Nacif-Borge*, 829 F. Supp. at 1213.  One facing an extradition hearing, however, has the burden of establishing special circumstances warranting pre-hearing conditional release. *See Matter of Extradition of Smyth*, 976 F.2d 1535, 1535–36 (9th Cir. 1992); *Kamrin v. United States*, 725 F.2d 1225, 1228 (9th Cir. 1984).  Because an extradition proceeding is not criminal case, the Bail Reform Act of 1984 does not govern, nor is its presumption in favor of bail applicable. *Kamrin*, 725 F.3d at 1227–28.

What constitutes "special circumstances" justifying the granting of bail in the international extradition context has not been precisely defined, and courts have considered on a case-by-case basis what circumstances are sufficient to overcome the strong presumption against bail. *In re Extradition of Maniero*, 950 F. Supp. 290, 294 (S.D. Cal. 1996); *accord In re Extradition of Kirby*, 106 F.3d 855, 863 (9th Cir. 1996) ("*Wright v. Henkel* does not provide significant guidance as to what 'circumstances' might be considered 'special.'"); *Gullers v. Bejarano*, No. 06 CV 1659 JM (AJB), 2009 WL 250053, at * 1 (C.D. Cal. Feb. 2, 2009) ("The contours of the 'special circumstances' standard have not been defined by the courts, but rather are addressed on

a case-by-case basis."). In *Salerno*, the Ninth Circuit provided some examples of special circumstances, which included the raising of claims upon which the individual whose extradition was sought has a high probability of success, serious deterioration of health while incarcerated, and unusual delay in the appeal process. 878 F.2d at 317. This list, however, is not exhaustive, and "the determination of what constitutes a 'special circumstance[]' is left to the sound discretion of the trial judge." *In re Extradition of Santos*, 473 F. Supp. 2d 1030, 1036 (C.D. Cal. 2006) (citation omitted); *see also Garcia v. Benov,* No. CV 08-07719 MMM (CWx), 2009 WL 6498194, at *3 (C.D. Cal. Apr. 13, 2009); *In re Extradition of Gonzalez*, 52 F. Supp. 2d 725, 736 (W.D. La. 1999) ("The list of potential 'special circumstances' is not limited to those previously recognized in published decisions."). "Determining whether certain facts qualify as a special circumstance requires a cautious judgment by the judge, taking into account the totality of the facts and having a healthy respect for this country's international treaty agreements." *In re Extradition of Beresford-Redman*, 753 F. Supp. 2d 1078, 1087 (C.D. Cal. 2010) (citation omitted). Moreover, special circumstances must be extraordinary, and not factors applicable to all defendants facing extradition. *Smyth*, 976 F.2d at 1535–36; *see also In re Extradition of Kyung Joon Kim*, No. CV 04-3886-ABC (PLA), 2004 WL 5782517, at *2 (C.D. Cal. July 1, 2004) ("Special circumstances must be extraordinary and not factors applicable to all defendants facing extradition.") (quoting *Extradition of Maniero*, 950 F. Supp. at 294).

One who seeks bail when their extradition is sought must establish the existence of special circumstances by a preponderance of the evidence. *Santos*, 473 F. Supp. 2d at 1035; *Garcia*, 2009 WL 6498194, at *3. In addition to showing special circumstances justifying release on bail, one who's extradition is sought "also must demonstrate that there is no risk he will fail to appear for further extradition proceedings and that he is not a danger to the community." *Santos*, 473 F. Supp. 2d at 1035 (citation omitted).

/////

/////

/////

/////

**DISCUSSION**

**A. Standard of Review**

In criminal proceedings in federal court, a district court reviews *de novo* a magistrate judge's detention order under the Bail Reform Act of 1984, 18 U.S.C. § 3145. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990) (holding that the district court erred in reviewing the magistrate judge's findings under a "clearly erroneous" standard, and that it should have "ma[de] its own independent determination whether the magistrate's findings are correct, with no deference"). Although the Bail Reform Act does not apply to extradition cases, courts have similarly applied a *de novo* standard of review in reviewing a magistrate judge's bail determination in international extradition proceedings. *See, e.g., Garcia*, 2009 WL 6498194, at *3 ("A district judge reviews a magistrate judge's detention or release determination *de novo*.") (citing *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985)); *see also Borodin v. Ashcroft*, 136 F. Supp. 2d 125, 128 (E.D.N.Y. 2001) (holding that *de novo* review of magistrate judge's detention order is proper when bail is sought by way of petition for habeas corpus); *United States v. Hills*, 765 F. Supp. 381, 383 n.3 (E.D. Mich. 1991) (reviewing appeal of magistrate judge's detention order in an extradition proceeding *de novo*). Accordingly, the undersigned will employ the *de novo* standard of review here.

**B. Whether Special Circumstances Exist**

As noted above, special circumstances have not been precisely delineated in this context. *See Santos*, 473 F. Supp. 2d at 1036; *Gonzalez*, 52 F. Supp. 2d at 736. It has been recognized that the cumulative effect of various factors, however, may constitute special circumstances justifying release on bail in extradition proceedings. *Matter of Extradition of Morales*, 906 F. Supp. 1368, 1373 (S.D. Cal. 1995) ("[T]here need not be one overriding circumstance justifying an extraditee's release on bail. Rather, the cumulation of several factors can constitute special circumstances that justify bail in extradition proceedings."); *Nacif-Borge*, 829 F. Supp. at 1216 ("[C]ourts are now recognizing that the cumulation of several factors may constitute special circumstances.").

/////

9

Here, appellant Blasko argues that the following special circumstances warrant his release on bail: (1) the likelihood that these extradition proceedings, including potential appeals, will be unusually long and complex; (2) the likelihood that he will succeed on the merits; (3) the demonstrated lack of diplomatic urgency displayed on the part of Slovakia in seeking his extradition; (4) the possibility of bail in Slovakia; and (5) his pending asylum case in which a merits hearing on his application for asylum has been now scheduled. (Doc. No. 35 at 34; Doc. No. 44.) The court considers each in turn.

### 1. Length and Complexity of Extradition Proceeding and Appeal

Blasko first argues that this extradition proceeding, based on an incident that occurred eleven years ago, presents unique difficulties likely to result in an unusually prolonged proceeding and several potential appeals. (Doc. No. 35 at 34.) Since the initiation of these extradition proceedings in October 2017, Blasko's extradition counsel contend that they have undertaken extensive investigation, including reviewing hundreds of pages of documents from Blasko and Gregusova's asylum cases, contracting with a local Slovakian-English interpreter to translate documents and conversations in person and by telephone, and contacting various attorneys and other individuals in Slovakia who have been involved in this case. (*Id.* at 35.) However, according to the Blasko's counsel, significant additional investigation remains, including having a defense investigator and interpreter travel to Slovakia to interview relevant witnesses and secure their declarations, and obtaining, translating, and reviewing the Slovakian case file, which is approximately 1,000 pages in length. (*Id.*) This additional investigation, as characterized by Blasko's counsel, is "necessary and central" to challenging the government's showing of probable cause in support of extradition. (*Id.*)

Courts have found that the projected length of the extradition proceedings may constitute a special circumstance justifying the granting of bail in such cases. *See, e.g.*, *United States v. Castaneda-Castillo*, 739 F. Supp. 2d 49, 60–61 (D. Mass. 2010) (finding undue delay a special circumstance where defendant "has made it clear that he intends to challenge the Government's showing of probable cause," evidence beyond the charges would have to be translated, and years of immigration proceedings would have to be reviewed); *In re Extradition of Chapman*, 459 F.

Supp. 2d 1024, 1027 (D. Haw. 2006) (finding a "high probability of delay in the extradition proceedings" a special circumstance, because the underlying offense occurred more than three years ago and "it may be difficult to track down witnesses and prepare evidence for the hearing"); *Morales*, 906 F. Supp. at 1375 (finding the likelihood of delay to constitute a special circumstance because government had filed a new complaint resulting in several months of delay, and there were "a number of factual and legal issues to be researched, briefed, heard, and resolved," including a challenge to the government's showing of probable cause).

Here, Blasko intends to challenge the government's probable cause showing, which will involve interviewing witnesses to an incident that occurred in 2007, over a decade ago. This understandably requires some time. On May 30, 2018, after the pending appeal of the magistrate judge's bail determination was taken under submission, an extradition hearing in this case was scheduled before a magistrate judge of this court for October 30, 2018. (Doc. No. 42.) Thus, by the time the extradition hearing is held, Blasko and his counsel will have had one year to prepare for it. If a continuance of the hearing were to be granted, or were habeas review of the magistrate judge's extradition determination to be sought, it is possible that the proceedings may be even more protracted.

Nonetheless, the court is not persuaded that this likely delay is necessarily unusual. Moreover, the delay until now has been in large part due to the requests for continuances brought by counsel on Blasko's behalf. (*See* Doc. Nos. 14, 15, 30.) Blasko's "own tactical actions" do not amount to a special circumstance. *See United States v. Ramnath*, 533 F. Supp. 2d 662, 676 (E.D. Tex. 2008) ("It is inconsistent for Dr. Ramnath to argue that a delay caused by her should qualify as a special circumstance justifying her release."). The court therefore concludes that Blasko has failed to show by a preponderance of the evidence that the length and complexity of these international extradition proceedings and possible subsequent appeals constitute a special circumstance justifying his release on bail.

2. Likelihood of Success on the Merits

Blasko next argues that he has demonstrated a likelihood of success on the merits of these proceedings, due to "numerous factual and procedural irregularities." (Doc. No. 35 at 42.)

Although he raises several alleged irregularities, Blasko's main contention is that the government's entire showing of probable cause rests on the statements of ten witnesses, who did not appear at the trial *in abstentia* conducted in Slovakia, did not testify at that trial, and whose statements do not appear to be sworn to under penalty of perjury.  (*Id.* at 39.)  Blasko argues that this undermines the government's ability to demonstrate that there is probable cause to believe he committed the offenses upon which his extradition to Slovakia are sought and also demonstrates that he is likely to prevail on the merits at his extradition hearing.[5]

The law is clear that one who's extradition is sought is not entitled to turn an extradition hearing into a trial on the merits.  *See Santos v. Thomas,* 830 F.3d 987, 991–92 (9th Cir. 2016) (en banc) (citing *Collins v. Loisel,* 259 U.S. 309, 314–15 (1922)); *Hooker v. Klein,* 573 F.2d 1360, 1368 (9th Cir. 1978) ("The nature of an extradition proceeding is such that the merits of the fugitive's guilt or innocence are not explored.").  Notwithstanding the limited scope of an extradition hearing, the Ninth Circuit has held that, in determining probable cause, evidence that a statement was obtained under torture or other coercion constitutes "explanatory" evidence that is admissible in an extradition proceeding.  *Santos,* 830 F.3d at 1005.

Blasko relies primarily on the ten witness statements in arguing that the government will be unable to demonstrate probable cause.  The ten witness statements, as noted by the Slovakian

---

[5] Here, in order to establish that the requested extradition of Blasko is warranted, the United States on behalf of Slovakia must show that the following requirements are met:  (1) that an extradition treaty between the United States and Slovakia is in full force and effect and that Blasko is the individual sought by Slovakia; (2) that the extradition magistrate has jurisdiction over Blasko; (3) that Blasko may be extradited on the offenses with which he is charged under the terms of the treaty; (4) that there is probable cause to believe Blasko committed the offenses upon which extradition is sought; (5) that the United States has submitted the required documents on behalf of the Government of Slovakia and those documents have been properly authenticated; and (6) there are no provisions of the treaty which bar the extradition for any of the charges upon which extradition is sought.  *See generally Fernandez v. Phillips,* 268 U.S. 311, 312 (1925); *Manta v. Cherto*ff, 518 F.3d 1134, 1140 (9th Cir. 2008); *Prasoprat v. Benov,* 421 F.3d 1009, 1013 (9th Cir.2005), *cert. denied* 546 U.S. 1171 (2006)); *Barapind v. Reno,* 225 F.3d 1100, 1105 (9th Cir. 2000); *Zanazanian v. United States,* 729 F.2d 624, 625–26 (9th Cir. 1984); *see also In re Extradition of Ortiz,* 444 F.Supp.2d 876, 882 (N.D. Ill. 2006).  All of these formulations of what must be established in support of an extradition request vary slightly, but are essentially the same, whether they are addressing the extradition magistrate's consideration of a request or a habeas court's review of the extradition magistrate's decision.

judgment of conviction, were "almost identical," and were simply read into the record at trial without the possibility of cross-examination. (Doc. No. 35 at 44.) Blasko notes that no information was provided as to when those statements were given, how they were obtained, or whether they were given under oath. (*Id.*) The five witnesses who did testify at the trial *in abstentia*, on the other hand, either exculpated or did not directly inculpate Blasko. (*Id.*) Blasko argues that these circumstances call into serious doubt the veracity of the ten witness statements, and establish his high likelihood of success at the extradition hearing before this court.

Although the court agrees that the circumstances of Blasko's prosecution in Slovakia, including the delays, lack of notice and trial *in abstentia*, appear somewhat suspect, it would be premature for the court to conclude that Blasko has a "high probability" (*see Salerno*, 878 F.2d at 317) of prevailing at his extradition hearing.[6] Indeed, counsel for Blasko have acknowledged that they intend to investigate whether the witness statements were manufactured, false, or coerced. (Doc. No. 35 at 41.) Any assertion that the witness statements relied upon at trial in Slovakia were manufactured, false, or coerced is mere speculation at this juncture.

Recognizing that he has raised significant issues calling the proceedings in Slovakia into question, the court nonetheless concludes that Blasko has failed to show by a preponderance of the evidence that he has a high probability of prevailing on the merits at his extradition hearing.

### 3. Lack of Diplomatic Urgency

Blasko next argues that the complete lack of diplomatic urgency on the part of Slovakia is a special circumstance warranting his release on bail pending these extradition proceedings. (*Id.* at 47.) According to Blasko, Slovakia's lack of urgency is made evident by the totality of the

---

[6] The court notes that the record of the proceedings in Slovakia on its face is somewhat puzzling. For instance, the alleged victim (Kozma) did not appear or testify at Blasko's April 15, 2013 trial *in abstentia*. (Doc. No. 1 at 2.) Instead, statements apparently taken from him years earlier, on August 17, 2007 and April 24, 2009, were merely read into the record. (*Id*. at 2–3.) This procedure was necessitated by the fact that despite repeated attempts by the authorities, the alleged victim refused to attend the trial or cooperate in the prosecution in any way. (*Id.* at 2-3, 67–68.) In addition, although there is reference to testimony from Blasko being read into the record at his trial *in abstentia*, it appears clear that all that was read was an invocation by Blasko of his right to remain silent when first asked about the incident. (*Id.* at 72.) Finally, although reference is made at times to the judgment and/or sentence being affirmed on appeal, again *in abstentia*, it is apparent that the appeal was limited to a review of the sentence. (*Id.* at 91–93.)

following delays:  first, when Slovakia waited to pursue charges against him in connection with the July 13, 2007 incident until January 8, 2008 or June 3, 2010; second, when Slovakia delayed until June 9, 2011 to issue an international warrant for his arrest; third, when Slovakia failed to file the formal extradition documentation required by the Treaty within two months of Blasko's provisional arrest, resulting in Blasko's release from U.S. Immigration custody on June 22, 2012; fourth, when Slovakia again delayed until January 21, 2014 to obtain a second international arrest warrant; and fifth, and perhaps most inexplicably, when Slovakia waited over 40 months after obtaining that second warrant, until June 6, 2017, to file the treaty-required documentation in support of a formal extradition request.  (*Id.* at 47–48.)  Because of these delays on the part of Slovakia, the extradition proceeding before this court was not initiated until the June 6, 2017 letter was sent from the Slovakian Embassy to the United States Department of State—almost ten years after the July 13, 2007 incident underlying the criminal charges against Blasko in Slovakia.

Courts have held that a special circumstance exists where the requesting nation has "not made prosecution of [the] offense a priority."  *See Chapman*, 459 F. Supp. 2d at 1027 (finding a special circumstance where "Mexico waited three years before bringing extradition proceedings against the Respondents, during which Respondents were living openly and notoriously"); *see also Castaneda-Castillo*, 739 F. Supp. 2d at 57–58 (finding lack of explanation for five-year delay between issuance of an order commencing the investigation and the defendant's provisional arrest, where defendant was "easily found," weighed "very heavily in favor of release"); *Wroclawski v. United States*, 634 F. Supp. 2d 1003, 1008 (D. Ariz. 2009) (finding lack of explanation for eleven-year delay in seeking extradition, "despite the fact that Petitioner lived openly in the United States and made no effort to hide his whereabouts," was a special circumstance favoring release).

Here, it is quite evident that Slovakia has not made prosecution of this offense a priority in any sense.  The government claims that Slovakia sought an indictment against Blasko as early as January 8, 2008—yet Blasko applied for and obtained a Slovakian passport in January 2010 and remained employed as a police officer in that country until October 2009.  (Doc. No. 35-1, Exs. A, I, J.)  Following the June 3, 2010 indictment, Slovakia did not issue an international arrest

warrant until a year later, on June 9, 2011. (Doc. No. 35-1, Ex. D.) After Blasko was arrested on the international arrest warrant by U.S. Immigration authorities at his home in Fresno on February 15, 2012, Slovakia took absolutely no action to seek his extradition, resulting in his release from custody here in the United States on a $5,000 bond several months later. (Doc. No. 35-1, Ex. M at ¶¶ 10–12.) Almost two years after that arrest, in January 2014, Slovakia obtained another international arrest warrant but again, inexplicably, took no action to seek Blasko's extradition until forty months later, on June 6, 2017. (Doc. No. 1 at 7–12, 97–109.) Prior to moving to the United States, Blasko states that he informed the police department, with whom he was engaged in civil proceedings, of his enrollment at Fresno Pacific University, and indeed, the June 9, 2011 international arrest warrant identifies Blasko's address as 1717 South Chestnut Avenue, the address for Fresno Pacific University. (*See* Doc. No. 35-1, Ex. D.) The Slovakian court records before this court also reflect that officials there knew that Blasko was in Fresno and at Fresno Pacific University. (*See* Doc. No. 1 at 66–67, 104–05.) It is entirely unclear what diplomatic necessity or urgency exists now, more than a decade after the underlying incident, and when the Slovakian government has clearly been aware of Blasko's whereabouts in Fresno since at least 2011.

In arguing that any lack of urgency on the part of Slovakia here does not constitute a special circumstance, the government relies on *Matter of Extradition of Drumm*, 150 F. Supp. 3d 92, 98–99 (D. Mass. 2015), in which the court held that Ireland's delay in prosecution did not demonstrate lack of diplomatic urgency. However, the court in *Drumm* determined that Ireland had actively been investigating the case in question, and that "'[t]he normal passage of time inherent in the litigation process' does not constitute a special circumstance." *Id.* at 98 (citing *United States v. Kin-Hong*, 83 F.3d 523, 525 (1st Cir. 1996)). Similarly, in *In re Extradition of Garcia*, the court found that "it cannot be said that [the Philippines] has failed to make prosecution of the offense a priority" because the trial against the defendant's father had been ongoing for the last few years, and it was reasonable to assume that the Philippines intended to try the defendant and other relatives at the same time. 615 F. Supp. 2d 162, 172, 175 (S.D.N.Y. 2009). In contrast, the unusual circumstances of this case are not attributable to the "normal

passage of time" inherent in litigation. No explanations have been forthcoming with respect to the numerous delays on the part of Slovakia in seeking Blasko's extradition despite clear knowledge of his whereabouts. For example, no reasonable explanation has been offered for the forty-month delay between the issuance of the second international warrant for Blasko's arrest and Slovakia's extradition request.

The government also relies on the decision in *United States v. De Loera*, in which the court ultimately denied bail despite the approximately ten to eleven years between the issuance of the arrest warrant and Mexico's extradition request. No. 2:06-MJ-98-PRC, 2006 WL 1519891, at *3–4 (N.D. Ind. May 31, 2006). The district court in that case specifically acknowledged that the lengthy delay made the decision "a difficult one, especially since [De Loera] has lived an apparently stable life here in the United States for many years, is a family man, and has no record of prior criminal convictions." *Id.* at *3. However, the court ultimately concluded that the totality of the circumstances did not justify pre-hearing release, apparently relying on the complaint's allegation that the defendant had admitted to law enforcement his intent to traffic marijuana. *Id.* at *4. No such admissions of guilt by Blasko have been alleged here. Moreover, unlike *De Loera*, it is not merely the unusual length of the delay in seeking extradition, but the unusual procedural history of this case that evidences a complete lack of urgency on the part of the requesting nation, including Blasko's continued employment as a police officer following the apparent return of the indictment against him in Slovakia, the fact that Blasko was granted a valid Slovakian passport and permitted to leave the country, and the fact of Blasko's prior provisional arrest and release from immigration custody in this country.

Finally, the government's reliance on *In re Extradition of Drayer*, 190 F.3d 410 (6th Cir. 1999) in this regard, is inapposite. The Sixth Circuit held in *Drayer* that the fourteen-year delay between the issuance of the Canadian arrest warrant and Canada's formal request for extradition did not violate the petitioner's due process rights. *Id.* at 415. There, the petitioner's argument regarding delay was couched entirely in terms of his due process rights against extradition, not whether delay was a special circumstance warranting his pre-hearing release. *Id.* Indeed, the Sixth Circuit's opinion in *Drayer* does not mention bail or special circumstances at all.

16

Thus, all of the cases cited by the government in this regard are distinguishable. In sum, the court is persuaded that the clear lack of diplomatic urgency on the part of Slovakia in seeking Blasko's extradition amounts to a special circumstance favoring the granting of release on bail. The authorities cited by the government do not compel a contrary conclusion.

### 4. Possibility of Bail in Slovakia

The next special circumstance Blasko identifies is the possibility of bail in Slovakia. (Doc. No. 35 at 49.) According to Blasko, if an individual charged in Slovakia with the crime of abuse of power and assault would have the possibility of bail, or if an individual involved in extradition proceedings in Slovakia would have the possibility of bail, this would weigh in favor of pre-hearing release here. (*Id.*) Blasko has submitted an excerpt of a 2009 study funded by the European Commission on pre-trial detention in Slovakia, as well as an affidavit by Juraj Koprda, a Slovakian attorney practicing in the Czech Republic, in support of his argument that a similarly-situated individual charged with the underlying offenses in Slovakia or involved in an extradition proceeding in Slovakia would have the possibility of release on bail pending those proceedings. (*See* Doc. No. 35-2, Exs. Z, BB.)

Even if the court assumes that bail would be available in Slovakia, it appears that most courts to have considered the issue have concluded that the possible availability of bail in the requesting country is not a special circumstance. *See, e.g.*, *Matter of Extradition of Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1298–99 (S.D. Fla. 2017) (collecting cases); *Matter of Extradition of Antonowicz*, 244 F. Supp. 3d 1066, 1070–71 (C.D. Cal. 2017) (holding that "the availability of bail in the extraditing country is not a special circumstance"); *Drumm*, 2016 WL 111411, at *4 ("Of even less relevance are the bail practices of the demanding State . . ., which are often beyond the competence or predictive ken of United States court. Foreign bail practices should have no role in shaping the discharge by a United States court of its limited duties in adjudicating an extradition demand."); *In re Extradition of Gohir*, No. 2:14-mj-00314-CWH, 2014 WL 2123402, at *12 (D. Nev. May 21, 2014) (holding that "the availability of bail in the requesting country on the underlying offense is not a special circumstance"); *Extradition of Azizi*, No. 5:14-xr-90282 PSG, 2014 WL 1995083, at *2 (N.D. Cal. May 13, 2014) (concluding that

"while at least one court in the District of Nevada has found that the availability of bail, standing alone, is a special circumstance warranting release . . . this court agrees with the reasoning of others in that same district who conclude that the availability of bail in the requesting country is not a special circumstance"); *Garcia*, 615 F. Supp. 2d at 172 (noting that if the availability of bail in the requesting country on the underlying offense were a special circumstance, "the exception would soon swallow the rule"); *In re Extradition of Kyung Joon Kim*, No. CV 04-3886-ABC (PLA), 2004 WL 5782517, at *2 ("The court is persuaded that the availability of bail is not, in itself, a special circumstance because in many, if not most, instances, bail would be available in the extraditing country for the charged offense.").

Blasko cites three cases in which the district court considered the availability of bail in the country requesting extradition. (Doc. No. 35 at 49) (citing *United States v. Taitz*, 130 F.R.D. 442, 447 (S.D. Cal. 1990); *Wroclawski*, 634 F. Supp. 2d at 1008–09; and *Castaneda-Castillo*, 739 F. Supp. 2d at 58–59). The court has considered these decisions but elects to adopt the reasoning of the numerous courts that have arrived at the opposite conclusion, finding their reasoning on this point to be more persuasive. As one court articulated:

> [A]doption of [a rule] under which an extraditee can be admitted to bail in the United States if the underlying offense is bailable in the requesting country[] would force courts to make searching reviews of foreign laws to determine whether bail is appropriate for a given defendant in a given country for a given offense. That would be an undesirable practice: it might well be unworkable, and, if applied widely, it could eviscerate, at least with respect to requesting countries whose domestic practice, like our own, strongly favors bail, the doctrine set out by the Supreme Court that bail is the exception, not the rule, in international extradition cases.

*In re Extradition of Siegmund*, 887 F. Supp. 1383, 1386–87 (D. Nev. 1995). The court finds such reasoning persuasive and declines to consider the possible availability of bail in Slovakia for those facing the underlying charges as a special circumstance warranting Blasko's release pending these extradition proceedings.

### 5. Pending Civil Litigation/Asylum Proceedings

In a supplemental memorandum filed on July 30, 2018, Blasko proffers an additional special circumstance justifying the granting of bail. (Doc. No. 44.) On July 17, 2018, the

18

immigration judge in Blasko's asylum case denied the Department of Homeland Security's motion to hold the removal proceedings in abeyance pending completion of these extradition proceedings. (*Id.* at 3.) As a result, the merits hearing in Blasko's asylum case is now scheduled to proceed on September 12, 2018. (*Id.*) Blasko argues that this ongoing civil matter, and his need to consult with his immigration attorney to adequately prepare for the upcoming merits hearing, constitutes a special circumstance. (*Id.* at 3–4.)

In support of this proposition, Blasko cites *In re Mitchell*, where the court found that the defendant's personal participation was needed in a civil trial, thus justifying his release on bail. 171 F. 289, 290 (S.D.N.Y. 1909). Blasko also relies upon *In re Extradition of Bowey*, in which the court found that "releasing Mr. Bowey on bail would allow him to participate in the divorce proceedings" in state court, and that those civil proceedings were "directly related to the reasons for his extradition and the resolution of the issues in that matter could directly affect the prosecution of the charges he faces in France." 147 F. Supp. 2d 1365, 1368 (N.D. Ga. 2001). One district court has noted that "'pending civil litigation' is rarely found to constitute 'special circumstances'; it is only if the court is convinced that the defendant's personal participation in the conduct of the civil litigation is absolutely and immediately necessary that it is deemed a sufficient 'special circumstance' to warrant release on bond." *United States v. Hills*, 765 F. Supp. 381, 386 (E.D. Mich. 1991).

Here, the court finds that Blasko's preparation for and participation in the merits hearing is "immediately necessary." *Id.* Blasko's counsel represents that Blasko's presence in court is required for the merits hearing on his asylum application, that Blasko will likely testify at that hearing, and that the hearing is expected to take more than one day. (Doc. No. 44 at 3.) Moreover, the court is persuaded that Blasko's asylum proceedings are "directly related to the reasons for his extradition," *Bowey*, 147 F. Supp. 2d at 1368, in that Blasko contends before this court that the criminal charges brought against him in Slovakia, as well as the trial *in absentia* and conviction there, constitute political persecution. In this regard, the court finds the present case distinguishable from other cases in which courts have held that the desire of one whose extradition is sought to participate in a pending civil action was not a special circumstance. *See,*

19

1    *e.g.*, *Koskotas v. Roche*, 740 F. Supp. 904, 919 (D. Mass 1990), *aff'd* 931 F.2d 169 (1st Cir. 1991)

2    (rejecting pending civil litigation as a special circumstance because there was no evidence that the

3    trial of the civil action was imminent); *Hills*, 765 F. Supp. at 387 (finding no special circumstance

4    based on pending civil litigation where the defendant admitted that there were no trials or

5    hearings scheduled in any of his pending civil suits prior to the extradition hearing); *Matter of*

6    *Extradition of Russell*, 647 F. Supp. 1044, 1049 (S.D. Tex. 1986) (finding no special

7    circumstance based on pending civil litigation where "[a]mple time" remained for petitioner to

8    consult with his attorney and petitioner's "personal participation in these matters is not

9    required").

10        Accordingly, the court finds that Blasko's pending asylum case and the imminent merits

11    hearing on his application for asylum also constitutes a special circumstance weighing in favor of

12    the setting of bail in this action.[7]

13    **C. Flight Risk and Danger to the Community**

14        Above, the court has concluded that both the lack of diplomatic urgency displayed in this

15    case, as well the need for Blasko to participate in his ongoing asylum case, are special

16    circumstances weighing in favor of his release on bail. Having so found, the court turns to

17    consider the risk of flight and danger to the community posed by Blasko's release. *Santos*, 473 F.

18    Supp. 2d at 1035 (stating that party seeking release on bail in an international extradition case

19    must show both that special circumstances exist and that he does not pose a risk of flight or

20    danger to the community).

21        Since arriving in the United States in 2010, all evidence indicates that Blasko has lived

22    openly and notoriously in Fresno, California. He has strong ties to this community, having

23    started a family with his wife and son, passed the California state general contractor's

24    examination, and established his own contracting business. (Doc. No. 35-1, Exs. Q, R.) He and

25

26    [7] The court acknowledges that the government has not had the opportunity to respond to this
recently raised argument. However, given that the court has already concluded that the lack of

27    diplomatic urgency exhibited in this case constitutes a special circumstance and has found that
Blasko will neither flee nor pose a danger to the community if released on bail, further delay in

28    the issuance of this order is deemed not to be warranted.

his wife have litigated their asylum cases since 2012, and have not left the United States so as not to jeopardize their pending asylum claims. (Doc. No. 35 at 17.) In his ongoing asylum proceedings in U.S. Immigration Court, Blasko has never failed to appear for court hearings in San Francisco, violated any condition of release imposed by the immigration court, or lost contact with his immigration attorney. (Doc. No. 35-1, Ex. M at ¶ 19.) Aside from his apparent conviction *in abstentia* in Slovakia, Blasko has had no prior arrests, criminal charges brought against him, or convictions in Slovakia or the United States. (Doc. No. 35 at 22; Doc. No. 1 at 70–71.)

In addition to the above factors, nineteen letters from various family members, friends, and members of the Fresno/Clovis community were submitted to the court on Blasko's behalf attesting at length to his good character, excellent business reputation, and his extraordinary contributions to the community. (Doc. No. 35-1, Ex. S; Doc. No. 35-2, Ex. DD; Doc. No. 37-1.) Among those representing that they know Blasko well and attesting to these positive traits are a Dean and an Associate Dean at Fresno Pacific University, professors, attorneys, teachers, other general contractors, former clients, a Certified Public Accountant, a nurse, and the District Attorney of the County of Fresno.[8] Finally, as noted, Blasko has a wife and young child here to whom he is very much devoted by all accounts. This evidence, considered in its totality, constitutes a very strong showing that Blasko poses neither a flight risk nor a danger to the community if released on bail pending these extradition proceedings.

In rebuttal, the government merely argues that Blasko is a flight risk because he has already evaded justice in Slovakia, even after he learned in March 2012 that he was the subject of an international arrest warrant. (Doc. No. 36 at 28.) Although Blasko does not dispute that he first learned of the international arrest warrant in March 2012, while he was in immigration custody in this country, Blasko was released in June 2012 after the Slovakian government failed to file any of the treaty-required documentation necessary to seek his extradition. (Doc. No. 35-1,

---

[8] Indeed, at least one court has concluded that a strong showing of community support, such as that presented here, is properly considered as a special circumstance warranting bail in and of itself. *Wroclawski*, 634 F. Supp. 2d at 1009 (citing *Kirby*, 106 F.3d at 864–65).

Ex. M at ¶¶ 7–10.)  Blasko states that upon his release by U.S. Immigration officials, he was not informed of any criminal proceedings pending against him in Slovakia, and that it was not until June 2015 that he learned of his conviction *in absentia* and the appeal brought on his behalf.  (*Id.* at ¶ 13.)  Nothing in the record currently before this court establishes otherwise or in any way suggests that Blasko sought to evade the charges in Slovakia or to conceal his presence in Fresno from either Slovakia or United States officials.  In fact, all the evidence before the court indicates that Blasko not only has lived openly at all relevant times, first in Slovakia and then in Fresno, but also that he notified Slovakian officials of where he would be in Fresno.[9]

The government also argues that "the violent nature of Blasko's assault evidences the fact that he is a danger to the community."  (Doc. No. 36 at 28.)  This conclusory allegation fails to rebut any of the evidence presented by the defense that Blasko poses no such danger if released. Moreover, in this extradition context it may that Blasko's *in absentia* conviction in Slovakia may only be regarded as a mere charge.  *See Arambasic v. Ashcroft*, 403 F. Supp. 2d 951, 962 (D.S.D. 2005) ("[W]here a conviction is the result of a trial *in absentia*, the conviction is regarded merely as a charge, requiring independent proof of probable cause.") (citing M. Basiouni, International Extradition: United States Law and Practice, Ch. VIII, § 4.8 (4th Ed.2002)); *Suyanoff v. Terrell*, No. 12-CV-05115 (DLI), 2014 WL 6783678, at * 6 (E.D.N.Y. Dec. 2, 2014) (same); *Germany v. United States*, No. 06 CV 01201 (DLI), 2007 WL 2581894, at *7 (E.D.N.Y. Sept. 5, 2007) (same); *In re Ribaudo*, 2004 WL 213021, at * 4 (S.D.N.Y. Feb. 3, 2004) (same); *see also Gallina v. Fraser*, 278 F.2d 77, 79 (2d. Cir. 1960) (acknowledging "the rule that a foreign conviction *in absentia* does not preclude the federal court from considering whether sufficient evidence of the relator's criminality has been presented in the extradition proceeding"); *but see Haxhiaj v. Hackman*, 528 F.3d 282, 289 (4th Cir. 2008) (finding that where an extradition request was based upon a conviction obtained *in absentia*, a reasonable basis upon which to find probable cause was provided by the opinion of the Court of Appeal of Milan which the court noted was

---

[9]  Perhaps this explains why officials in this country have now twice had no apparent difficulty in locating Blasko at his home in Fresno and arresting him in connection with this same underlying matter—first, Homeland Security officers on February 15, 2012, and then U.S. Marshals on October 6, 2017.

"remarkable for its detailed description of the evidence developed during the investigation of Haxhiaj's drug trafficking ring, including [a] key wiretap describing Haxhiaj's role[.]"); *Matter of Extradition of Manea*, Civ. No. 15 MJ 157 (JGM), 2018 WL 1110252, at * 23–24 (D. Conn. Mar. 1, 2018).[10]

The court concludes that the government has failed to rebut the strong showing made by Blasko that he is neither a flight risk nor a danger to the community if released on bail.

### D. Due Process Challenge

Blasko argues that the requirement of special circumstances in addition to lack of flight risk or danger to the community in order to be granted bail in these international extradition proceedings constitutes a violation of his due process rights.  (Doc. No. 35 at 29–33.)  Because the court has found that special circumstances do exist here and that Blasko is neither a flight risk nor a danger if released, thereby entitled to bail, the court need not address his constitutional argument.

### CONCLUSION

The court is satisfied that this case presents both unusual and special circumstances that, when coupled with the lack of flight risk and danger to the community posed by his release,

/////
/////
/////
/////
/////
/////
/////
/////
/////
/////

---

[10]  Though detailed, the written decisions of record in this case are, at least in some respects, somewhat puzzling.  *See* fn. 6, above.

entitles Blasko to bail pending these extradition proceedings.[11]  Accordingly, his motion for bail is granted.  The case will be placed on the court's calendar August 6, 2018 at 1:30 p.m. for the setting of conditions of release.  The court refers this matter to the U.S. Probation Office pursuant to 18 U.S.C. § 3603(1) for preparation of a report and recommendation with respect to appropriate conditions of release and supervision.

IT IS SO ORDERED.

Dated:  __**August 1, 2018**__

_____
UNITED STATES DISTRICT JUDGE

---

[11]  As noted above, whether special circumstances are present and whether one whose extradition is sought has made a clear and convincing showing of the lack of flight risk and danger to the community posed by their release, must be determined on a case by case basis.  Nonetheless, the court observes that the determination made here is consistent with those made by numerous other courts.  *See Matter of Extradition of Mirela,* No. 15 MJ 157 (JGM), 2018 WL 1634393, at *2 (D. Conn. Apr. 5, 2018) (finding special circumstances and granting release pending habeas review of grant of request for extradition to Romania in a financial fraud case based upon the requesting country's delay in seeking extradition and the individual's compliance with conditions of release, family obligations and good standing in her community); *In re Extradition of Kapoor*, No. 11-M-456 (RML), 2011 WL 2296535, at *3–5 (E.D.N.Y. June 7, 2011) (special circumstances found due to a lack of diplomatic urgency given the delay of several years by officials in India, the possibility of release on bail in India, and the likelihood of future delays in the extradition proceedings); *Castaneda-Castillo*, 739 F. Supp. 2d at 57–61 (special circumstances found based upon the lack of diplomatic urgency in seeking extradition where five years elapsed between the order commencing the investigation and the petitioner's provisional arrest, as well as the availability of bail in Peru and the likelihood of future delays in the extradition proceedings); *Wroclawski*, 634 F. Supp. 2d at 1006–09 (special circumstances found based upon the 12-year lapse of time between petitioner being charged and the extradition request, the availability of bail in Poland, the petitioner's ability to train military and law enforcement personnel, and strong community support); *Chapman*, 459 F. Supp. 2d at 1027 (special circumstances found because of high probability of delay in the extradition proceedings, given that the underlying offense occurred over 3 years prior, and a lack of diplomatic urgency since Mexico waited three years before seeking extradition during which time the respondents were living openly and notoriously).