# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE EXTRADITION OF VLADIMIR BLASKO TO THE SLOVAK REPUBLIC, | Case No. 1:17-mc-00067-DAD-SAB<br><br>ORDER DENYING GOVERNMENT'S MOTION TO REVOKE BAIL AND INCREASING BAIL AMOUNT<br><br>(ECF Nos. 58, 61, 62, 66) |

## I.

## BACKGROUND

On October 2, 2017, the Government filed this action seeking the extradition of Vladimir Blasko to the Slovak Republic. (ECF No. 1.) Mr. Blasko appeared on October 6, 2017, and was ordered detained. (ECF No. 9, 10.) Mr. Blasko filed a request for bail, which was denied by United States Magistrate Judge Barbara A. McAuliffe on February 16, 2018. (ECF Nos. 22.) Mr. Blasko appealed the denial of bail; and, on August 1, 2018, District Judge Dale A. Drozd granted the motion for bail pending the extradition hearing. (ECF No. 45), In the Matter of Extradition of Vladimir Blasko to the Slovak Republic ("Extradition of Blasko"), No. 1:17-MC-00067-DAD-SAB, 2018 WL 3691859 (E.D. Cal. Aug. 1, 2018).

An extradition hearing was held on October 30, 2018, and on November 19, 2018, an order was filed finding there was sufficient evidence to sustain the charges under the extradition treaty

1

and certifying the extraditability of Mr. Blasko. (ECF Nos. 53, 55, 56.) On November 27, 2018, the Government filed a notice of post certification letter and a motion to revoke bail. (ECF Nos. 58, 59.) A status conference was held on November 28, 2018, and a briefing schedule was set for the Government's motion to revoke bail. (ECF Nos. 59, 60.) On November 30, 2018, Mr. Blasko challenged the certification order by petition for a writ of habeas corpus. Blasko v. Thomas, No. 18-cv-01649-DAD-SAB (E.D. Cal.). Mr. Blasko filed an opposition to the motion to revoke bail on December 12, 2018. (ECF No. 61.) On December 17, 2018, the Government filed a reply. (ECF No. 62.)

A hearing was held on the motion to revoke bail on December 19, 2018. Vincenza Rabenn appeared telephonically for the Government; Reed Grantham and Victor Chavez appeared with Mr. Blasko. The hearing was continued to January 22, 2019 for Mr. Blasko to file a proffer on potential collateral available. On January 14, 2019, Mr. Blasko filed a supplemental brief re collateral.

The hearing continued on January 22, 2019. Vincenza Rabenn appeared for the Government; and Reed Grantham appeared with Mr. Blasko.

## II.

## DISCUSSION

### A. Arguments of the Parties

The Government argues that the plain language of the statute compels the conclusion that detention is mandatory during the time between the certification and surrender. The Government argues that while the statute is silent regarding the issue of bail prior to the Court certifying an extraditee for the Secretary of State's decision on surrender, the statute provides that the court "shall" order the extraditee to remain in custody until his surrender thus depriving the Court of discretion to grant bail after certification. The Government also argues that to allow bail ignores the statutory language that the extraditee shall be committed to and must remain in jail until the time of his surrender.

Mr. Blasko counters that every court to have considered the issue has rejected the argument that bail cannot be granted once certification has issued. The Government replies that section 3184

mandates detention now that Mr. Blasko has been certified as extraditable.

**B.  Whether Bail is Available Post-Certification**

"Extradition from the United States is governed by 18 U.S.C. § 3184, which confers jurisdiction on 'any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States' to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation, and to issue a certification of extraditability to the Secretary of State." In re Extradition of Santos, 795 F.Supp.2d 966, 969 (C.D. Cal. 2011). As pertinent here, section 3184 provides,

> If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and **he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made**.

18 U.S.C. § 3184 (emphasis added).

"The primary concern in an international extradition matter is to deliver the extraditee to the requesting nation." Matter of Extradition of Nacif-Borge, 829 F.Supp.1210, 1213 (D. Nev. 1993). Whether an extraditee is entitled to bail pending resolution of the limited proceedings in the arresting country is not explicitly referred to in the statute. Often the argument is raised that because the statute is silent the Court is without the authority to grant bail. However, courts have considered and rejected the argument that they are without power to grant bail following certification of a request for extradition. USA v. Matter of Extradition of Gonzalez, No. 09-MJ-70576-DMR-1, 2015 WL 1409327, at *4 (N.D. Cal. Mar. 27, 2015); Garcia v. Benov, No. CV 08-07719 MMM CWX, 2009 WL 6498194, at *5 n.23 (C.D. Cal. Apr. 13, 2009).

The quintessential case addressing this issue is Wright, in which the Supreme Court considered the issue of bail in an extradition proceeding. The Government argues that the Supreme Court explained in Wright v. Henkel, 190 U.S. 40 (1903) that granting bail was inconsistent with section 3184.

In Wright, Great Britain sought the extradition of a United States citizen on charges that he

committed fraudulent acts as a corporate director. Wright, 190 U.S. at 41. The commissioner found Wright to be extraditable on the provisional warrant. Id. at 42. Wright sought release on bail based on an affidavit from his physician that he was suffering from bronchitis and a chill that might develop into pneumonia and the detention was injuring his health. Id. at 43. Wright's request for bail was denied because the commissioner found he lacked the power to grant bail. Id. at 43. Wright brought a writ of habeas corpus in the circuit court arguing that the extradition request was defective so there was no jurisdiction and his detention was illegal. Id. at 43. The writs were dismissed after a hearing and Wright's request for bail was denied. Id. Wright then appealed to the Supreme Court.

On appeal, the court found the existence of the treaty and that the offenses were crimes in either jurisdiction and found that jurisdiction existed. Wright, 190 U.S. at 43, 61. The Court then considered whether the commissioner erred in denying bail. Id. at 61. The Court found that there The Supreme Court took issue with the finding that the court lacked the power to grant bail. The Court considered the lack of statutory authority in extradition cases, "[n]ot only is there no statute providing for admission to bail in cases of foreign extradition, but [the statute], is inconsistent with its allowance after committal, for it is there provided that, if he finds the evidence sufficient, the commissioner or judge 'shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.[1]' " Wright, 190 U.S. at 62. The Court also recognized that the government might not be able to meet its obligation to surrender the extraditee if the bond was forfeited. Id.

The Court considered that in Queen v. Spilsbury [1898], 2 Q. B. 615, it was held that jurisdiction to admit to bail existed independently of the statute, but that the case arose under the Fugitive Offenders Act and the distinction between that Act and the cases arising under the Extradition Act were pointed out. Wright, 190 U.S. at 63. Most importantly for the purposes of the current motion, the Wright court found that "the same reasons which induced the language used in the statute would seem generally applicable to release pending examination." Id. The

---

[1] Although the statute at issue in Wright was in existence prior to the current statute, the language in the two statues is identical.

4

Wright court then refused to hold that the district court did not have the power to release an extradite on bail, and found that "special circumstances" could justify bail. Wright, 190 U.S. at 62-63.

Although the Government argues that the Supreme Court did not apply the same post-certification language in the pre-certification context, courts find that Wright did apply the same language in both pre- and post-certification. See Garcia, 2009 WL 6498194, at *5 n.23 ("Thus, Wright drew no analytical distinction between pre- and post-certification bail applications; in analyzing the appellant's pre-certification bail request[.]") The Court does note that the issue of bail in the extradition process is largely judge made law that is not necessarily consistent with the language of the statute or the purposes of the extradition treaties. But courts have consistently found that Wright provides the authority to grant bail in an extradition proceeding. See also Mapp v. Reno, 241 F.3d 221, 226 (2d Cir. 2001) (finding that courts have inherent authority to grant bail to individuals within their jurisdiction).

Wright acknowledged the power of the court "to grant bail in extradition cases involving 'special circumstances' as a matter of federal common law equally applicable both pre- and post-certification." Garcia, 2009 WL 6498194, at *5 n.23 (collecting cases for proposition that bail in extradition cases is determined by federal common law); see also Kamrin v. United States, 725 F.2d 1225, 1228 (9th Cir. 1984) (standard for bail in extradition cases is different than for federal criminal cases and the Bail Reform Act does not apply); Salerno v. United States, 878 F.2d 317, 317 (9th Cir. 1989) (citing special circumstances standard in considering appeal of denial for request for bail after order certifying extraditability). Since Wright, courts "have not drawn any distinction between pre-and post-certification bail applications and have time and again considered bail requests after a judicial finding of extraditability." In re Kapoor, No. 11-M-456 RML, 2012 WL 2374195, at *3 (E.D.N.Y. June 22, 2012) (collecting cases); see also Matter of Extradition of Gonzalez, 2015 WL 1409327, at *5 (agreeing that courts have the authority to consider bail in extradition cases after a certificate of extraditability has issued); Wroclawski v. United States, 634 F.Supp.2d 1003, 1005 (D. Ariz. 2009) ("subsequent case law has made clear that the special circumstances test is applicable in both the pre- and post-certification stages of extradition"); but

see Mapp, 241 F.3d at 225 n.4 (some courts find Wright's holding to be dicta and proceed as if unfettered by the Supreme Court's language). Indeed, the Ninth Circuit applied the special circumstances analysis in denying a request for bail during the pendency of a petition for a writ of habeas corpus. See Salerno, 878 F.2d at 318. This is persuasive authority that bail is available in both pre- and post-certification phases of the extradition process.

The Government cites to In re: Extradition of Markey, No. 3:09-MJ-75 CAN, 2010 WL 610975, at *4 (N.D. Ind. Feb. 18, 2010), to argue that the Court lacks jurisdiction to grant bail post-certification. The Markey court found that "[t]he law is clear, and the parties agree, that this Court has no authority to release Markey after it issues the certificate of extraditability." However, since Markey agreed that the Court had no authority to release him after finding him extraditable, the opinion contains no analysis or discussion to support the conclusion that the court did not have the authority to grant bail and the Court finds Markey to have little precedential value.[2]

Similarly, the Government cites to Perez v. Mims, No. 1:16-CV-00447-DAD-SKO, 2016 WL 3254036, at *2 (E.D. Cal. June 14, 2016), for the proposition that courts have no discretionary decisions to make. However, this statement was made in the context of whether to certify the individual as extraditable. Perez did not address the issue of bail after the individual has been certified as extraditable. The law is clear in the context of whether to certify an individual as extraditable that the court has no discretionary decisions to make. The Court's review "is limited to a narrow set of issues concerning the existence of a treaty, the offense charged, and the quantum

---

[2] The Government also relies on Lopez-Smith v. Hood, 121 F.3d 1322, 1326 (9th Cir. 1997), a case in which the court was considering whether a fugitive's mental incompetence was relevant to whether there was probable cause to extradite. The Ninth Circuit stated,

> The statute says that if the magistrate judge "deems the evidence sufficient to sustain the charge," then the magistrate judge "shall" certify that to the Secretary of State, and "shall" issue a warrant for the commitment of the accused. The magistrate judge has no discretionary decision to make. As in Charlton v. Kelly, 229 U.S. 447, 461-62, 33 S.Ct. 945, 949-50, 57 L.Ed. 1274, (1913), the magistrate judge properly refused to hear evidence which did not bear on whether there was probable cause to believe that two murders had been committed in Agua Prieta, and that Lopez-Smith had committed them.

Lopez-Smith, 121 F.3d at 1326. In Lopez-Smith, the Ninth Circuit did not address the issue of bail and, as discussed in this order, the statute is silent as to whether bail is available after extradition is certified. Therefore, the Court finds Lopez-Smith to be distinguishable from the matter to be decided here.

of evidence offered[.]" Santos, 830 F.3d at 991.[3] In deciding whether to certify extradition, the Court does not make any discretionary decisions, but is generally concerned with whether the requesting nation has complied with the treaty requirements, the offence is extraditable under the treaty, and if the evidence is sufficient to show that probable cause exists to believe the individual committed the charged offense. However, this lack of discretion does not extend to the issue of whether bail should be granted.

Nor does the Court find that the language of the statute requiring a warrant to issue is determinative as to the matter of bail. Although section 3184 provides that the extraditee shall be committed to the proper jail, it neither provides for nor prohibits bail, but is silent on the issue. The Supreme Court has stated that legislative silence does not provide the controlling rule of law. Zuber v. Allen, 396 U.S. 168, 185 (1969); Girouard v. United States, 328 U.S. 61, 69 (1946). Here, as discussed above, Wright declined to find that courts do not have the authority to issue bail in an extradition matter. Since Wright, courts have found that they possess the authority to grant bail post-certification. See Garcia, 2009 WL 6498194, at *5 n.23; In re Kapoor, 2012 WL 2374195, at *3; Matter of Extradition of Gonzalez, 2015 WL 1409327, at *5; Wroclawski, 634 F.Supp.2d at 1005. The Court finds that it has the authority to release an extraditee on bail after certification of extraditability.

### B. Special Circumstances

The Government argues that Mr. Blasko's bail should be revoked because there are no special circumstances to warrant his continued release and he is a flight risk. Mr. Blasko counters that it has already been established by the prior order that special circumstances exist due to the

---

[3] In regards to bail issues, jurisprudence in the area of extradition law is often confusing and inconsistent with this "limited review." Reviewing cases in this area of law often confirms that some decisions over step the limited review by treading in areas that are reserved for the Executive Branch and its relation to the requesting state as part of a valid treaty.

Extradition proceedings are limited and deadlines are established which should technically not require the extraditee to be detained beyond these limited timeframes and statutory timing requirements. So, conceivably detention should be limited in the arresting country. See 18 U.S.C. § 3182 (timing of agent appearance before an arrestee is released [applicable re: fugitives from state or territory]); 18 U.S.C. § 3187 (maximum an extraditee can be held under this section [90 days]) and 18 U.S.C. § 3188(timing by which extradite is delivered to requesting country [2 calendar months]) and pursuant to treaty obligations the timing of when provisional arrest warrants and/or extradition packages must be submitted to an arresting country upon an arrest.

7

delay in seeking extradition. Further, Mr. Blasko contends that requiring him to demonstrate special circumstances violates due process because he has already shown that he is not a flight risk or danger to the community. The Government replies that there are no special circumstances present that would warrant release on bail.

1. <u>Whether special circumstances exist to grant bail</u>

"There is a presumption against bail in an extradition case and only 'special circumstances' will justify bail." <u>Salerno</u>, 878 F.2d at 317 (quoting <u>Wright</u>, 190 U.S. at 63 and <u>Hu Yau–Leung v. Soscia</u>, 649 F.2d 914, 920 (2d Cir.), cert. denied, 454 U.S. 971 (1981)); <u>Matter of Requested Extradition of Kirby</u>, 106 F.3d 855, 858 (9th Cir. 1996), as amended (Feb. 27, 1997); <u>In re Extradition of Santos</u>, 473 F.Supp.2d 1030, 1035 (C.D. Cal. 2006). "Although it is 'unusual and extraordinary' for bail to be granted, it is not impossible to obtain bail in an international extradition treaty case." <u>Matter of Extradition of Nacif-Borge</u>, 829 F.Supp. at 1213.

While bail may be granted under "special circumstances," the term has not been precisely defined, <u>Matter of Requested Extradition of Kirby</u>, 106 F.3d at 863; but, the Ninth Circuit has provided examples, such as "the raising of substantial claims upon which the appellant has a high probability of success, a serious deterioration of health while incarcerated, and unusual delay in the appeal process[,]" <u>In re Extradition of Santos</u>, 473 F.Supp.2d at 1036 (citations omitted). Further, "[t]he list of potential 'special circumstances' is not limited to those previously recognized in published decisions,' and 'the determination of what constitutes a 'special circumstance,' is left to the sound discretion of the trial judge.' " <u>Id.</u> (quoting <u>In re Extradition of Gonzalez</u>, 52 F.Supp.2d 725, 736 (W.D.La.1999); and <u>Beaulieu v. Hartigan</u>, 554 F.2d 1, 1 (1st Cir.1977)). "The Ninth Circuit has explained that issues common to all incarcerated defendants do not qualify as 'special circumstances.' " <u>In re Extradition of Beresford-Redman</u>, 753 F.Supp.2d 1078, 1087 (C.D. Cal. 2010) (citing <u>In re Extradition of Smyth</u>, 976 F.2d 1535, 1535–36 (9th Cir.1992)).

"The party seeking release on bail in an international extradition case also must demonstrate that there is no risk he will fail to appear for further extradition proceedings and that he is not a danger to the community, but those factors are not special circumstances which alone justify release on bail." <u>In re Extradition of Santos</u>, 473 F.Supp.2d at 1035 (citing <u>In re Extradition</u>

8

of Smyth, 976 F.2d at 1536); Salerno, 878 F.2d at 318); Kamrin, 725 F.2d at 1228); and In re Extradition of Chapman, 459 F.Supp.2d 1024, 1026-27 (D. Hawaii 2006)). The burden to establish special circumstances is on the extradite who must show by a preponderance of the evidence that he is entitled to bail.[4] Extradition of Blasko, 2018 WL 3691859, at *5.

The Government argues that the two circumstances that the court previously found to be special circumstances do not justify his release post-certification.

In the August 1, 2018 order granting Mr. Blasko's motion for bail pending the extradition hearing, Judge Drozd found two special circumstances warranting release on bail. Extradition of Blasko, 2018 WL 3691859. At the time, Mr. Blasko's asylum case was proceeding and he argued that he needed to consult with his immigration attorney to prepare for the asylum proceeding. Id. at 10. The court found that Mr. Blasko's need to prepare and participate in the asylum proceeding was immediately necessary and this was a special circumstance weighing in favor of granting bail. Id. at 10-11. This is no longer the case as the asylum matter has been postponed and will not take place for approximately nine months. Mr. Blasko argues that he has requested that his hearing be advanced from the continued date of November 19, 2019, (Respondent's Motion to Advance Individual Hearing, ECF No. 61-1 at 94-97), and this continues to be a special circumstance justifying relief. However, it is speculative that the immigration hearing will be advanced. Further, the Ninth Circuit has held that the need to prepare for court hearings is not a special circumstance justifying bail. Matter of Extradition of Smyth, 976 F.2d at 1535–36 ("The need to consult with counsel, gather evidence and confer with witnesses, although important, is not extraordinary; all incarcerated defendants need to do these things."); see also Matter of Perez-Cueva, No. 16-0233M, 2016 WL 884877, at *3 (C.D. Cal. Mar. 7, 2016) ("The inability to assist

---

[4] The Court recognizes that there is conflicting authority on the standard to be used. See Matter of Extradition of Nacif-Borge, 829 F.Supp. at 1214-15 (applying clear and convincing standard); Matter of Extradition of Maniero, 950 F.Supp. 290, 294 (S.D. Cal. 1996) (applying clear and convincing standard); United States v. Snyder, No. 13-7082-MJ, 2013 WL 1364275, at *3 (D. Ariz. Apr. 3, 2013) (applying clear and convincing standard); In re Extradition of Gohir, No. 2:14-MJ-00314-CWH, 2014 WL 2123402, at *11 (D. Nev. May 21, 2014) (applying clear and convincing standard); In re Extradition of Santos, 473 F.Supp.2d at 1036 n.5 (applying preponderance of the evidence standard); Garcia, 2009 WL 6498194, at *3 (applying preponderance of the evidence standard); Santos v. Thomas, No. CV 11-06330 MMM, 2012 WL 12964319, at *2 (C.D. Cal. June 29, 2012) (applying preponderance of the evidence standard); Matter of Perez-Cueva, No. 16-0233M, 2016 WL 884877, at *2 (C.D. Cal. Mar. 7, 2016) (recognizing conflict and finding evidence insufficient under either standard). The Court adopts the preponderance of the evidence standard as previously applied by Judge Drozd in the August 1, 2018 order.

counsel and appear at pending court proceedings are hardships faced by all incarcerated persons and do not constitute 'special circumstances' warranting release.").

Judge Drozd found that Plaintiff's immigration matter was a special circumstance because his preparation for and participation in the case was immediately necessary. Extradition of Blasko, 2018 WL 3691859, at *10. However, that no longer remains the case as the hearing in the matter has been continued to November of 2019, approximately 9 months in the future. Therefore, Mr. Blasko's pending asylum case no longer constitutes a special circumstance weighing in favor of granting bail.

Judge Drozd also found that the lack of diplomatic urgency on the part of Slovakia was a special circumstance warranting Mr. Blasko's release on bail pending the extradition proceedings. Extradition of Blasko, 2018 WL 3691859, at *8-9. The Government argues that the foreign government's delay in seeking extradition should not be considered by the district court but is a matter exclusively reserved for the Secretary of State's consideration.

When extradition has been requested from the United States, any "delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward." Kamrin, 725 F.2d at 1227. However, such delay may not serve as a defense to the judicial extradition proceedings. Id.; Man-Seok Choe v. Torres, 525 F.3d 733, 742 (9th Cir. 2008). The Government argues that this principle applies equally to the determination of whether bail should be granted.

In determining whether to certify extradition, the court's review "is limited to a narrow set of issues concerning the existence of a treaty, the offense charged, and the quantum of evidence offered" with "[t]he larger assessment of extradition and its consequences [being] committed to the Secretary of State." Santos, 830 F.3d at 991 (quoting United States v. Kin–Hong, 110 F.3d 103, 110 (1st Cir.1997). In determining whether probable cause exists to certify extradition, the court is not to weigh conflicting evidence. Santos, 830 F.3d at 992. The accused may submit evidence to "explain matters referred to by the witnesses for the government[,]" but evidence that merely contradicts the testimony of the prosecution may be excluded. Santos, 830 F.3d at 992 (citations omitted). Therefore, evidence that the requesting nation delayed in seeking extradition is not

relevant to whether there is probable cause to certify extradition. Cf. Kamrin, 725 F.2d at 1227 ("delay in seeking extradition may be relevant to the Secretary of State's final determination as to whether extradition may go forward").

However, in determining whether to grant bail, the Court is considering whether "special circumstances" exist to justify bail. Salerno, 878 F.2d at 317. Special circumstances must be extraordinary and not merely factors that apply to all defendants facing extradition. Matter of Extradition of Smyth, 976 F.2d at 1535–36); Matter of Extradition of Nacif-Borge, 829 F.Supp. at 1216. The requesting country's delay in seeking extradition is not a factor that would apply to all incarcerated defendants and could be relevant in determining whether bail should be granted. Courts find that a lengthy unexplained delay in seeking extradition can be a special circumstance to grant bail. See Wroclawski, 634 F.Supp.2d 1003 (D. Ariz. 2009) (11 year delay); United States v. Castaneda-Castillo, 739 F.Supp.2d 49, 58 (D. Mass. 2010) (5 year delay); In re Extradition of Chapman, 459 F.Supp.2d at 1027 (finding Mexico did not make prosecution of offense a priority and waited three years before bringing extradition proceedings during which time the extraditees were living opening and notoriously); cf. Matter of Extradition of Ramirez, No. CV 09-1785-JVS (PLA), 2009 WL 10674425, at *3 (C.D. Cal. Apr. 8, 2009) (refusing to undertake review of the reasonableness of the requesting country's failure to seek extradition earlier).

The Government relies on Martin v. Warden, Atlanta Pen, 993 F.2d 824, 830 (11th Cir. 1993), to argue that "[a] judicial determination that a foreign country has taken too long to request extradition—despite complying with the applicable statute of limitations and other requirements under the extradition treaty—'would conflict directly with the rule of non-inquiry which precludes extradition magistrates from assessing the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request.' " (Gov.'s Mot. to Revoke Bail 7, ECF No. 58.) However, in Martin the court was addressing the extraditee's argument that the delay in seeking extradition violated his constitutional right to a speedy extradition. Martin, 993 F.2d at 829. Here, the Court is not addressing whether extradition should occur, but whether the delay in seeking extradition is a special circumstance that would weigh in favor of granting bail. The Court is therefore not "assessing the investigative, judicial, and penal systems of foreign nations when

reviewing an extradition request." But is merely considering whether the delay demonstrates a lack of diplomatic urgency by the requesting country.

In deciding that Mr. Blasko had demonstrated special circumstances existed to grant release on bail, Judge Drozd found that "it is quite evident that Slovakia has not made prosecution of this offense a priority in any sense." Extradition of Blasko, 2018 WL 3691859, at *8. The Government also argues that factual developments in the extradition proceedings have undermined Mr. Blasko's claim that this case was not a priority for Slovakia. (ECF No. 58 at 7.) The Government argues that Judge Ondrejova executed her supplemental declaration just 12 days after the memorandum opposing certification was filed. However, this is not relevant to the delay that has been demonstrated between the incident itself, the initial international arrest warrant issuing, and Slovakia seeking extradition of Mr. Blasko. To the extent that the Government argues that Slovakia has demonstrated diplomatic urgency in the current proceedings, the Court considers the entirety of the proceedings against Mr. Blasko in determining whether Slovakia has demonstrated diplomatic urgency in the extradition of Mr. Blasko.

The Government argues that the factual record belies the claim that Slovakia has shown minimal interest in obtaining Mr. Blasko's return. The Government points out that Slovakian authorities started the criminal prosecution four days after the crime occurred, and Mr. Blasko exercised his right to be silent during the pretrial proceedings. The Government also argues that within 19 days of Mr. Blasko's stated departure from Slovakia, the District Headquarters of the Police Force in Dunajska Streda launched a search for Mr. Blasko and he was indicted on June 3, 2010. However, as Judge Drozd found in his order granting release on bail, the lack of diplomatic urgency is demonstrated by the fact that Slovakia waited to file charges against Mr. Blasko until June 3, 2010, three years after the incident. Extradition of Blasko, 2018 WL 3691859, at *8. During this time, Mr. Blasko continued to work as a police officer until October 2009, and he applied for and obtained a Slovakian passport in January 2010. Id. Then, Slovakia did not obtain an international arrest warrant until a year later, on June 9, 2011.[5] Id.

---

[5] The Government cites to the judgment which states that the international arrest warrant issued on October 29, 2010. (ECF No. 1 at 71.) While the document is dated October 29, 2010, it was signed by Judge Ondrejova on June 9, 2011. (ECF No. 35-1 at 18.)

12

The Government also argues that the record demonstrates that Slovakia attempted to locate Mr. Blasko but were unsuccessful because his parents stated that he had left Slovakia and they were unaware of his address. (ECF No. 8 at 8.) But Judge Drozd considered that Mr. Blasko was arrested on the international arrest warrant by United States Immigration authorities and placed in custody on February 15, 2012. Extradition of Blasko, 2018 WL 3691859, at *8. At that time, Slovakia did absolutely nothing to seek his extradition which resulted in his release from custody several months later on a $5,000.00 bond. Id. Further, although the Government argues that Slovakia did not know the whereabouts of Mr. Blasko, the international arrest warrant issued identifies his address as 1717 South Chestnut Avenue, Fresno, California, which is the address of Fresno Pacific University. Id.; (see ECF 35-1 at 15). Therefore, Slovakia was aware that Mr. Blasko had been residing in Fresno as early as October 29, 2010.

The Government also argues that a second international arrest warrant issued on January 21, 2014. (ECF No. 58 at 8.) Judge Drozd did consider that Slovakia did not seek the second international arrest warrant until two years after Mr. Blasko was in the custody of the United States on the first international arrest warrant and did not request extradition until forty months later, on June 6, 2017. Extradition of Blasko, 2018 WL 3691859, at *8.

Finally, Judge Drozd also found "it is not merely the unusual length of the delay in seeking extradition, but the unusual procedural history of this case that evidences a complete lack of urgency on the part of the requesting nation, including Blasko's continued employment as a police officer following the apparent return of the indictment against him in Slovakia, the fact that Blasko was granted a valid Slovakian passport and permitted to leave the country, and the fact of Blasko's prior provisional arrest and release from immigration custody in this country." Extradition of Blasko, 2018 WL 3691859, at *9. "In sum, the court is persuaded that the clear lack of diplomatic urgency on the part of Slovakia in seeking Blasko's extradition amounts to a special circumstance favoring the granting of release on bail." Id.

The Court is not persuaded that review of the current record belies the finding that Slovakia did not show any diplomatic urgency in seeking the extradition of Mr. Blasko. The record shows that while the investigation into the incident was ongoing, Mr. Blasko continued to work for the police

13

1 force for an extended period of time, and applied for and was granted a passport by Slovakia. As early
2 as October 2010, the requesting nation was aware that Mr. Blasko had been residing in the Fresno area
3 and, when he was arrested in 2012 in the immigration proceedings, Slovakia was notified but did not
4 seek extradition. In fact, it was not until approximately two years later that the second international
5 arrest warrant was obtained and then an additional forty months passed before Slovakia requested
6 extradition.

The Court finds that the lack of diplomatic urgency on the part of Slovakia in seeking the extradition of Mr. Blasko amounts to a special circumstance weighing in favor of granting bail.

2. <u>Whether requiring Mr. Blasko to show special circumstances violates due process</u>

Mr. Blasko relies on <u>Parretti v. United States</u>, 122 F.3d 758 (9th Cir. 1997), opinion withdrawn on reh'g, 143 F.3d 508 (9th Cir. 1998), to argue that it is an open question whether requiring him to show special circumstances violates his due process rights since he has already shown that he is not a flight risk or a danger to the community. Here, the Court has found that special circumstances exist and, as discussed below, that Mr. Blasko is not a flight risk and is thereby entitled to be released on bail. Therefore, the court declines to address Mr. Blasko's constitutional argument.

**C. Whether a Risk of Flight Exists**

If special circumstances are shown, the extraditee must also demonstrate that he or she is not a flight risk or a danger another person or to the community. <u>In re Extradition of Santos</u>, 473 F.Supp.2d at 1035; <u>Matter of Extradition of Nacif-Borge</u>, 829 F.Supp. at 1221; <u>Matter of Extradition of Antonowicz</u>, 244 F.Supp.3d 1066, 1068 (C.D. Cal. 2017). The Government does not contend that Mr. Blasko presents a danger to another person or the community, but argues that now that extradition has been certified, Mr. Blasko has a much greater incentive to avoid extradition by fleeing. Mr. Blasko argues that he is not a danger to the community and that he does not pose a risk of flight or nonappearance.

In granting Mr. Blasko's request for bail, Judge Drozd found

> Since arriving in the United States in 2010, all evidence indicates that Blasko has lived openly and notoriously in Fresno, California. He has strong ties to this community, having started a family with his wife and son, passed the California

14

state general contractor's examination, and established his own contracting business. He and his wife have litigated their asylum cases since 2012, and have not left the United States so as not to jeopardize their pending asylum claims. In his ongoing asylum proceedings in U.S. Immigration Court, Blasko has never failed to appear for court hearings in San Francisco, violated any condition of release imposed by the immigration court, or lost contact with his immigration attorney. Aside from his apparent conviction in abstentia in Slovakia, Blasko has had no prior arrests, criminal charges brought against him, or convictions in Slovakia or the United States.

In addition to the above factors, nineteen letters from various family members, friends, and members of the Fresno/Clovis community were submitted to the court on Blasko's behalf attesting at length to his good character, excellent business reputation, and his extraordinary contributions to the community. Among those representing that they know Blasko well and attesting to these positive traits are a Dean and an Associate Dean at Fresno Pacific University, professors, attorneys, teachers, other general contractors, former clients, a Certified Public Accountant, a nurse, and the District Attorney of the County of Fresno. Finally, as noted, Blasko has a wife and young child here to whom he is very much devoted by all accounts. This evidence, considered in its totality, constitutes a very strong showing that Blasko poses neither a flight risk nor a danger to the community if released on bail pending these extradition proceedings.

Extradition of Blasko, 2018 WL 3691859, at *11 (internal citations omitted).

Mr. Blasko argues that, outside the Government's speculation that he is more likely to flee at this juncture, the Government has presented no evidence that would rebut the previously strong showing that he is not a flight risk. Mr. Blasko has been released on bail in this matter since August 2018 and has appeared at all court hearings. Further, the Government has provided no evidence that he has failed to comply with his terms of release or set forth any evidence or non-speculative argument that Mr. Blasko is likely to flee now that extradition has been certified. The Court finds that the Government has not presented evidence nor set forth any reason to rebut the finding that Mr. Blasko is not a flight risk. However, as one of the special circumstances that existed at the time that Mr. Blasko was previously released on bail no longer exists, coupled with the fact that Mr. Blasko has now been found to be extraditable, the Court can reassess whether the bail previously set is sufficient to ensure that he will continue to appear in these proceedings.

### D. Amount of Bail

Currently, Mr. Blasko has been released on an unsecured bond of $10,000.00. (ECF No. 48.)[6] Given that Mr. Blasko has now been found to be extraditable, the Court finds that the risk of

---

[6] Additionally, due to the fact that one half of the surety agreeing to pay that $10,000 unsecured bond is the extraditee himself, the likelihood that he will pay the bond upon a fugitive status is close to non-existent. The

15

flight is greater than it was prior to the finding. The Court has rejected his arguments that the documents submitted were not sufficient to support a finding of extraditability. Accordingly, the Court finds that an increased bond is necessary to alleviate the increased risk and shall order a secured bond of $190,000.00. The Court finds that without this secured bond, Mr. Blasko would not be released as the conditions previously imposed would be insufficient to assure that he will continue to appear in this action.

Plaintiff has presented four individuals who are willing to offer collateral to secure his continued release. Three of the individuals are close friends of Plaintiff who are willing to post the equity in property they own, and Mr. Blasko's family in Slovakia is willing to post a cash bond of $40,000.00 which would be by an international transfer of funds and would take at least a week.

The Court shall order the bond to be secured by the $40,000.00 cash and a $150,000.00 property bond to be posted by the person identified as individual 3 in the brief re collateral. (ECF No. 66.) The parties are advised that the bond will not be released until this matter is concluded and the extradite is placed in custody or he is in the jurisdiction of the requesting country.

### III.

### CONCLUSION AND ORDER

The Court finds that Slovakia's delaying in seeking the extradition of Mr. Blasko is a special circumstance entitling Mr. Blasko to remain released on bail and that he is not a danger to the community or a flight risk once the bonds are in place.

Accordingly, IT IS HEREBY ORDERED that:

1. The Government's motion to revoke bail is DENIED;
2. Mr. Blasko shall remain released on a bail amount of one hundred ninety thousand dollars ($190,000.00) to be secured by forty thousand dollars ($40,000.00) in cash and a one hundred fifty thousand dollar ($150,000.00) property bond;
3. The bonds shall be posted and in place by Friday, March 1, 2018;
4. A status conference is set for Monday, February 11, 2019, at 11:00 a.m. in

---

other half of the surety, the extraditee's spouse, would more likely than not be in a financial position to then pay that unsecured financial obligation for a number of reasons. Hence, this $10,000 unsecured bond is wholly inadequate.

16

1. Courtroom 9; and

2. 5. Mr. Blasko shall appear at the February 11, 2019 status conference.

IT IS SO ORDERED.

Dated: **February 8, 2019**

_____
UNITED STATES MAGISTRATE JUDGE